**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT SWAYKA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 8786** |
| | ) | |
| **MENARD, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

On February 20, 2024, Robert Swayka purchased a significant amount of slatwall panels from Menard, Inc. (commonly known as Menards). Menards employees loaded the panels on top of a cart, and another employee accompanied Swayka while he pushed the cart through the parking lot to his vehicle. On the way, the cart stopped abruptly, apparently from hitting a crack in the pavement. The panels slid off the front of the cart, and this in turn caused the cart to lurch backwards into Swayka, injuring him. Swayka has filed suit against Menards, alleging that his injuries were caused by negligence on the part of its employees. Menards has moved for summary judgment. For the reasons below, the Court denies the motion.

**Background**

On the afternoon of February 20, 2024, Swayka purchased roughly eleven to fourteen slatwall panels from a Menards store in Illinois. Each panel was approximately four by eight feet and weighed over fifty pounds. Two employees laid the panels flat on

top of a horizontal panel cart—a cart with an elevated, horizontal, flat frame of metal rails—with the panels overhanging the cart frame. *See* Def.'s Stat. of Facts, Ex. D at 13:00–13:30. Swayka asked these employees for help with transporting the panels to his vehicle in the parking lot. According to Swayka, they said no. Roselyn Matos, the cashier who handled Swayka's purchase, testified that she called for a carryout—a courtesy service that Menards provides to customers who need help loading items. Matos also testified that she told Swayka to pull up his vehicle but that he declined to do so. Ultimately, Swayka was directed to another employee, Saul Amador, for help.

Swayka and Amador walked the cart into the parking lot, toward Swayka's car. Swayka pushed the cart from behind, and Amador stood next to it with his hand on top of the panels. Amador testified that he was trying to control and steer the cart. According to Swayka, the cart started speeding up—possibly because it was on a downslope. Swayka testified that he asked Amador to slow down but received no response. The cart then suddenly stopped, allegedly from hitting a crack in the pavement. The abrupt stop caused the panels to slide off the front of the cart, which in turn caused the cart to tilt upward, hit Swayka, and fall on top of him after he hit the ground. Swayka alleges that he suffered injuries as a result.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a movant must show that even after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could not return a verdict for the nonmovant. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the "party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If the party with the burden of proof cannot show that its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

## A.    Theory of liability

The parties dispute an important framing question concerning whether Swayka asserts an ordinary negligence claim or a premises liability theory. Menards says that Swayka's claim must proceed under a premises liability theory because his "alleged injury stems from a condition of the land." Def.'s Reply at 6. Swayka maintains that his claim is based on ordinary negligence; he says he "has not alleged . . . a claim" based on a premises liability theory. Pl.'s Resp. at 10.

Under Illinois law, an ordinary negligence claim "requires proof of (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately caused by the breach." *Martin v. City of Chicago*, 2023 IL App (1st) 221116, ¶ 22, 229 N.E.3d 986, 991. The Illinois Supreme Court has also recognized that a landowner may be liable for injuries caused by a dangerous condition on the land, *i.e.*, premises liability. *Id.* ¶ 21, 229 N.E.3d at 991 (citing *Genaust v. Ill. Power Co.*, 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472 (1976)). To establish a claim based on premises liability, a plaintiff must prove the three elements of ordinary negligence plus three more: (4) there was a condition on the

3

defendant's property that presented an unreasonable risk of harm, (5) the defendant knew or should have known of the condition and the risk, and (6) the defendant reasonably could have anticipated that others on the premises would fail to discover, recognize, or protect themselves from the danger. *Id.* ¶ 22, 229 N.E.3d at 991; *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

Whether a plaintiff's claim sounds in premises liability—and therefore must satisfy the three additional elements—depends on what the plaintiff alleges caused the injury. "If it is a landowner's *conduct or activity* that creates the injury-causing hazard, the claim is one of ordinary negligence rather than premises liability." *Martin*, 2023 IL App (1st) 221116, ¶ 23, 229 N.E.3d at 991. But "if it is a dangerous *condition* on the property that creates the injury-causing hazard, the claim is one of premises liability rather than ordinary negligence." *Id.* ¶ 24, 229 N.E.3d at 992. The plaintiff, as master of the complaint, can elect to proceed under either theory, so long as the allegations and evidence support it. *Id.* ¶ 28, 229 N.E.3d at 993–94; *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 718, 700 N.E.2d 212, 215 (1998).

In this case, Swayka appears to allege that his injuries were caused by negligent conduct. For example, he alleges that a Menards employee "negligently increased the speed of the cart or allowed the speed of the cart to increase." Compl. ¶ 11. Similarly, Swayka alleges that he suffered injuries "as a result of Defendant's negligence *in the operation and control of the cart*." Compl. ¶ 13. Moreover, paragraph 15 of the complaint lists seven specific allegations of negligence, each of which focuses on conduct:

> [T]he Defendant, Menard's, was negligent in one or more of the following respects through its agent / employee:

a.   Caused and/or allowed the aforesaid cart to go at a speed that was unsafe for the parking lot conditions; or

b.   Failed to slow the aforesaid cart in response to Plaintiff's request to . . . do so; or

c.   Failed to warn Plaintiff of the aforesaid dangers that would and/or did occur in moving the cart; or

d.   Failed to involve other agents / employees . . . in transporting a load of the size and weight of the one Plaintiff had; or

e.   Improperly used the cart in transporting the aforesaid load; or

f.   Failed to warn the Plaintiff of an upcoming hazard; or

g.   Failed to avoid a hazard in the parking lot when it was reasonably apparent to [the employee] that it would cause a sudden stop in the cart.

*Id.* ¶ 15.  Because Swayka alleges negligent conduct rather than relying solely on the dangerousness of the parking lot conditions as a basis for liability, he is entitled to proceed via a claim of ordinary negligence, and thus the Court need not address Menards' premises liability-based arguments.

**B.   Negligence**

With the appropriate theory of liability in mind, the Court now turns to whether Menards is entitled to summary judgment.  As mentioned above, negligence requires a showing of duty, breach, and proximate causation.

**1.   Duty**

When there is no dispute regarding the underlying facts, "whether a duty exists is a question of law for the court to decide."  *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13, 21 N.E.3d 684, 689.  But whether a duty exists may sometimes turn on a dispute of material fact, which must be resolved by a jury.  *See Nunez v. Diaz*, 2017 IL App (1st) 170607, ¶ 41, 98 N.E.3d 431, 443.  Under Illinois law, the touchstone of the duty analysis is whether, as a matter of policy, the relationship between the plaintiff and the defendant justifies imposing on the defendant "an obligation of reasonable conduct for

5

the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436, 856 N.E.2d 1048, 1057 (2006). Four factors guide that analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns*, 2014 IL 116998, ¶ 14, 21 N.E.3d at 689.

Several of Menards' arguments focus on whether the law should impose a duty on the company because of the conditions of its parking lot. Menards contends that any surface imperfections in the parking lot did not pose an unreasonable risk of harm. Instead, Menards argues that the alleged crack was open and obvious and that the company had no reason to expect that reasonably prudent people would be unable to protect themselves from it. Menards also asserts that it is not liable even if the parking lot conditions presented an unreasonable risk of harm because it lacked actual or constructive notice of the risk.

These arguments, though framed in terms of premises liability, are also relevant to an analysis of duty under ordinary negligence principles. When a condition is open and obvious, "the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.* ¶ 19, 21 N.E.3d at 690. Similarly, the question of notice—whether Menards knew or should have known about dangerous conditions in its parking lot—overlaps with the duty inquiry, which concerns balancing foreseeable harm and the burden of guarding against injury. Menards, recognizing that overlap, references these points to argue that it did not owe a duty to Swayka under ordinary negligence principles. On the third and fourth factors—the burden of guarding against the injury and the consequences of placing that burden on the defendant—

Menards further points out that "imposing a duty to constantly repair every crack would place an excessive and impractical burden on property owners." Def.'s Mem. at 9.

Nonetheless, the Court concludes that Menards owed a duty of reasonable care to Swayka. First, Menards' arguments leave open genuine disputes of material fact that preclude summary judgment. Whether a danger is open and obvious is a context-specific inquiry that requires considering the facts of the case. *See Ward v. K Mart Corp.*, 136 Ill. 2d 132, 147–53, 554 N.E.2d 223, 229–32 (1990). In *Ward*, for example, the plaintiff was injured when he collided with a concrete post outside of the defendant's store while carrying a large mirror he had purchased from the defendant. *Id.* at 135, 554 N.E.2d at 224. Though there was "nothing inherently dangerous about the post," the Illinois Supreme Court held that the "defendant's duty to exercise reasonable care extended to the risk that one of its customers would collide with the post while leaving the store carrying a large, bulky item." *Id.* at 136, 151, 554 N.E.2d at 224, 232. In the court's view, that particular risk was reasonably foreseeable. *Id.* at 152–54, 554 N.E.2d at 232–33. Thus the court held that the defendant owed a duty to the plaintiff; "whether the condition itself served as adequate notice . . . to satisfy the defendant's duty [were] questions properly left to the trier of fact." *Id.* at 156–57, 554 N.E.2d at 234.

This case presents a similar situation. Menards could reasonably foresee that customers leaving its hardware stores with large, heavy objects might be injured by the crack in its parking lot, particularly if they were pushing one of the carts supplied by Menards from behind, as Swayka was. Menards attempts to distinguish *Ward*, arguing that "*Ward* involved an obstructed structural post, not a routine surface condition. . . . Foreseeability of cart use does not transform an ordinary, open, and obvious condition

7

into an unreasonable risk." Def.'s Reply at 7. But by refusing to consider the foreseeability of cart use, Menards misses the point. The lesson from *Ward* and subsequent cases analyzing the open and obvious doctrine is that the obviousness of a danger cannot be measured in the abstract. Instead, a defendant may owe a duty to protect against an otherwise obvious danger—even a routine surface condition—if the defendant can anticipate that others will fail to protect themselves from the danger under foreseeable circumstances. *See Bruns*, 2014 IL 116998, ¶ 20, 21 N.E.3d at 691 ("[e]xceptions to [the open and obvious] rule make provision for cases in which 'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.'" (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). As in *Ward*, Menards' open and obvious argument is appropriately left to the jury to decide.

Menards' insistence that the crack was a mere routine surface condition also invokes the *de minimis* doctrine. That doctrine "recognizes that minor defects are outside the scope of a landowner's duty to maintain the property in a reasonably safe condition, for the purposes for which the property is intended." *Morris v. Ingersoll Cutting Tool Co.*, 2013 IL App (2d) 120760, ¶ 12, 1 N.E.3d 45, 48. For sidewalk defects, Illinois courts have generally limited the *de minimis* doctrine to defects less than two inches in height. *Id.* at ¶ 13, 1 N.E.3d at 48–49. For non-pedestrian areas that are more naturally susceptible to wear and tear, like parkways, Illinois courts apply the *de minimis* doctrine more generously to excuse liability for conditions that would be unacceptable in a sidewalk. *Id.* at ¶¶ 15–16, 1 N.E.3d at 49–50. But these are merely guideposts. "There is no mathematical formula or bright-line rule as to what constitutes

8

a slight defect, and each case must be determined on its own facts." *Id.* at ¶ 12, 1 N.E.3d at 48. If a reasonable person would anticipate some danger to others, the issue is typically left to the jury. *Hartung v. Maple Inv. & Dev. Corp.*, 243 Ill. App. 3d 811, 814, 612 N.E.2d 885, 888 (1993).

In this case, the Court cannot conclude, as a matter of law, that the crack was *de minimis*. Regarding the distinction between pedestrian and non-pedestrian areas, the crack at issue in this case seems to fall into a grey area. On the one hand, a parking lot outside of a commercial retail store is frequently used by pedestrians, which weighs in favor of imposing a duty to protect against even modest defects. On the other hand, parking lots likely are expected to have more wear and tear than sidewalks due to frequent vehicle use, which in turn means that imposing liability for minor defects may be prohibitively costly for business owners. Further complicating matters is the fact that neither party has offered a measurement of how large the crack was. Moreover, a jury reasonably could conclude from the evidence—including testimony from Swayka and the employees, the photograph of the crack (including that it appeared to be at or near the bottom of a downslope in the parking lot), and the video showing how it abruptly stopped the cart—that Menards reasonably should have anticipated some danger to others.

Next, Menards' alternative argument that it cannot be liable because it lacked notice of the crack is not an appropriate basis for summary judgment in this case. "Whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on the property is a question of fact." *Racky v. Belfor USA Grp., Inc.*, 2017 IL App (1st) 153446, ¶ 100, 83 N.E.3d 440, 462. A jury may infer

constructive notice from the nature of the condition itself. *Linh Phung Hoang Nguyen v. Nhutam Lam*, 2017 IL App (1st) 161272, ¶ 24, 90 N.E.3d 550, 555; *Baker v. Granite City*, 311 Ill. App. 586, 593, 37 N.E.2d 372, 375 (1941). For example, in *Baker* the plaintiff slipped and fell on a municipal catch basin. *Baker*, 311 Ill. App. at 588, 37 N.E.2d at 373. The Illinois Appellate Court held that entry of judgment as a matter of law against the plaintiff was inappropriate because a jury reasonably could infer from evidence that the catch basin was rusted and corroded that these conditions existed for a considerable period of time. *Id.* at 593, 37 N.E.2d at 375.

There is a genuine dispute of material fact regarding notice in this case. A reasonable jury could infer that a long crack in a concrete parking lot must have developed over a long enough period that it should have been identified through the exercise of reasonable care. Moreover, Swayka has produced evidence suggesting that Menards employees had actual notice of cracks and the danger they posed. Amador, the carryout employee who walked with Swayka, testified that he was aware of cracks in the parking lot. Giselle Dominguez, the assistant front end store manager at Menards on the day of the incident, similarly testified that there were cracks and slopes in the parking lot and that carryout employees were expected to know about those imperfections. Swayka also argues that a photo of the crack shows that it had been tarred over before, suggesting that Menards was aware of the crack and had tried to repair it in the past. A jury reasonably could infer from this evidence that Menards was on notice that the parking lot conditions presented a danger.

Finally, Menards faces a more fundamental problem: none of these arguments address Swayka's voluntary undertaking theory of duty. Illinois courts have adopted

Section 323 of the Restatement (Second) of Torts, which provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560 (1992) (quoting Restatement (Second) of Torts § 323 (1965)).  As a result, a defendant that voluntarily acts to protect another incurs a "duty with respect to the manner of performance." *Wakulich v. Mraz*, 203 Ill. 2d 223, 242, 785 N.E.2d 843, 854 (2003) (quoting *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 85, 199 N.E.2d 769, 779 (1964)).  The duty imposed is limited to the extent of the undertaking and is narrowly construed in light of "the specific act undertaken and a reasonable assessment of its underlying purpose." *Andrews v. Marriott Int'l, Inc.*, 2016 IL App (1st) 122731, ¶ 35, 61 N.E.3d 1105, 1117–18.

In this case, Menards voluntarily offered carryout assistance to Swayka.  Specifically, Menards employees undertook the tasks of loading the slatwall onto the cart and helping Swayka transport it to his vehicle.  This included, in Amador's words, trying to steer, stabilize, and control the cart.  As a result, Menards owed a duty of reasonable care in performing those tasks.  That is enough to establish a duty for purposes of Swayka's claim, which, as analyzed above, focuses on whether the Menards employees exercised ordinary care in carrying out those tasks, rather than the inherent dangerousness of the parking lot.

Menards provides two arguments that are responsive to Swayka's voluntary undertaking theory, but neither is persuasive. First, in Menards' view, Swayka must show reliance because his theory rests on nonfeasance or inaction—failure to avoid the crack, provide a warning, slow down the cart, or otherwise help avoid injury—rather than misfeasance or affirmative negligent conduct. This argument misunderstands the distinction. Nonfeasance is "fail[ure] to perform *at all*"; misfeasance is "*negligently perform[ing]* [a] voluntary undertaking." *Wakulich*, 203 Ill. 2d at 246, 785 N.E.2d at 856. The voluntary undertaking in this case was loading Swayka's cart and helping him transport it to his vehicle. Swayka's claim is not that Menards failed to perform those tasks at all but rather that it began the undertaking and failed to execute it with reasonable care. The fact that the alleged negligence—failure to take certain actions—can be characterized as inaction in a colloquial sense does not turn Swayka's claim into one for nonfeasance.

Second, Menards contends that it did not assume "a boundless duty to ensure Plaintiff's safety in the parking lot" by providing a mere courtesy. Of course not. But as Menards recognizes, the limiting principle is that the duty of reasonable care is limited to the scope of the undertaking. And as analyzed above, the duty that the Court must find for Swayka's claim matches the scope of the undertaking.

## 2. Breach and proximate cause

Breach and proximate cause are questions of fact for the jury to decide, unless "there is no material issue regarding the [point] or only one conclusion is clearly evident." *Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013) (internal quotations omitted) (citing *Adams v. N. Ill. Gas Co.*, 211 Ill. 2d 32, 43–44, 809 N.E.2d 1248, 1257

(2004)).

Many of Menards' arguments regarding breach and proximate cause overlap with its arguments for duty. As a result, these arguments do not address the conduct at the crux of Swayka's claim. For example, Menards' notice argument overlaps with an argument that it met a standard of reasonable care. Menards points out that employees conducted routine checks of the parking lot, the company employed a third party to conduct annual inspections, and it performed routine maintenance, as indicated by evidence that the crack had been tarred over in the past. But as discussed above, these arguments address the parking lot conditions but not Swayka's contention that the Menards employees acted negligently when loading and transporting the cart.

Focusing on that contention, the Court concludes that there is a genuine factual dispute concerning whether the Menards employees' conduct was unreasonable and whether it was the proximate cause of Swayka's injuries. Based on the record evidence, a reasonable jury could conclude that the Menards employees acted unreasonably by, for example, loading all of the panels onto only one cart, failing to secure the panels on the cart, having just one employee to assist Swayka with transporting the cart, failing to steer the cart away from potential hazards, or failing to help control the cart despite Swayka allegedly asking to slow down. A reasonable jury could also conclude from the evidence that these actions were the proximate cause of Swayka's injuries.

## Conclusion

For the reasons stated above, the Court denies Menard's motion for summary judgment [dkt. 27]. The Court sets the case for a telephonic status hearing on

November 12, 2025 at 9:10 a.m. for the purpose of resetting the remainder of the discovery schedule and setting a trial date.  The following call-in number will be used: 650-479-3207, access code 2305-915-8729.

MATTHEW F. KENNELLY
United States District Judge

Date:  November 7, 2025

14